UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MUTUAL OF ENUMCLAW, a Washington domestic insurer, individually and as assignee of Larry and Anita Clark, husband and wife,<br><br>           Plaintiff,<br><br>      v.<br><br>CORNHUSKER CASUALTY INSURANCE COMPANY, a foreign insurer,<br><br>           Defendant. | No. CV-07-3101-FVS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR A PROTECTIVE ORDER RE: MEDIATION COMMUNICATIONS |

    **THIS MATTER** came before the Court for a hearing, without oral argument, on Defendant's June 16, 2008, motion for a protective order regarding mediation communications. (Ct. Rec. 22). Plaintiff's motion for telephonic oral argument on Defendant's motion for a protective order (Ct. Rec. 35) is denied pursuant to this Court's authority under Local Rule 7.1(h)(3). Plaintiff is represented by Brad E. Smith, and Defendant is represented by A. Richard Dykstra and Stephanie L. Grassia.

///

ORDER . . . - 1

**BACKGROUND**

Larry and Anita Clark ("the Clarks") operate an orchard/farm and trucking business in Yakima, Washington. On October 17, 2003, Melvin McCormick, an employee of the Clarks, was involved in a motor vehicle collision with John and Nancy Green ("the Greens") while driving a semi-truck owned and operated by the Clarks in their businesses. Complaint ¶¶ 2.2-2.3. The Greens filed a complaint against the Clarks, and others, for personal injuries they sustained in the collision. Complaint ¶ 2.4.

The Clarks were insured for liability coverage under a Cornhusker business auto policy in the amount of one-million dollars. The Clarks also had business auto liability coverage in the amount of $500,000 under an Enumclaw policy. Complaint ¶ 2.5. Both Enumclaw and Cornhusker accepted the defense of the Clarks and McCormick without reservation of rights. Complaint ¶ 2.6.

Cornhusker subsequently identified a potential coverage defense but notified the Clarks that it would not raise any such coverage defense against them. Complaint ¶¶ 2.7-2.8. However, Plaintiff alleges that at a scheduled mediation of the Greens' case, Cornhusker notified representatives of Enumclaw of the purported coverage defense and indicated it would only contribute $200,000 toward the settlement of the case. Complaint ¶ 2.10.

The Greens' case did not settle at mediation. The Greens, however, later agreed to settle the matter with Enumclaw. As part of the settlement agreement, Enumclaw obtained an assignment of all of the Clarks' claims against Cornhusker. Complaint ¶ 2.15.

ORDER . . . - 2

Enumclaw, as the Clarks' assignees, brought the instant action alleging Cornhusker breached its contract to indemnify the Clarks, violated its duty of good faith and fair dealings to the Clarks, and violated the Washington State Consumer Protection Act. Complaint ¶¶ 3.1-5.5. Enumclaw additionally requests the Court declare that it is entitled to contribution/indemnification from Cornhusker for two-thirds of the settlement amount based upon the proportional limits of liability under their primary liability policies. Complaint ¶ 6.7.

Cornhusker ("Defendant") now moves the Court for an order protecting it from being required to disclose privileged mediation communications during discovery in this action. Defendant argues that communications before, during and after the mediation are protected by the mediation privilege and are not discoverable or admissible in evidence.

**DISCUSSION**

**I.  Scope of Discovery**

As a general rule, all information relevant to a claim or a defense of either party in a civil action is discoverable. Information sought in discovery need not itself be admissible at trial if it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). The trial court may, however, limit the scope of discovery in order to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c).

To obtain a protective order, the party resisting discovery or seeking limitations must show "good cause" for its issuance. Fed. R.

ORDER . . . - 3

Civ. P. 26(c); *Jepson, Inc. v. Makita Elec. Works, Ltd,* 30 F.3d 854, 858 (7th Cir. 1994).  Generally, a party seeking a protective order has a "heavy burden" to show why discovery should be denied and a strong showing is required before a party will be denied the right to discovery.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  "If the motion for protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery."  Fed. R. Civ. P. 26(c).

**II.  Applicable Law**

Under the *Erie* doctrine, a court sitting in diversity must apply state substantive law and federal procedural law.  *Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007); *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  It follows that the Federal Rules of Civil Procedure govern in federal diversity cases, provided that they are consistent with the Rules Enabling Act and do not "abridge, enlarge, or modify any substantive right."  *McCalla v. Royal Maccabees Life Ins. Co.*, 369 F.3d 1128, 1135 (9th Cir. 2004) (citing *Freund v. Nycomed Amersham*, 347 F.3d 752 (9th Cir. 2003)).  Similarly, "[m]ost evidentiary rules are procedural in nature, and the Federal Rules of Evidence ordinarily govern in diversity cases."  *Feldman v. Allstate Ins. Co.,* 322 F.3d 660, 666 (9th Cir. 2003) (internal quotation marks and citation omitted).

Accordingly, the Court will generally apply the substantive law of the state in adjudicating a diversity case with the federal rules governing the Court's determination of procedural and evidentiary

ORDER . . . - 4

issues.  However, the Federal Rules of Civil Procedure and the Federal Rules of Evidence do not supplant all state law evidentiary provisions with federal ones; rather, state evidence rules that are "intimately bound up" with the state's substantive decision making must be given full effect by federal courts sitting in diversity.  *Feldman*, 322 F.3d at 666 (citation omitted).  Moreover, some state law rules of evidence "in fact serve substantive state policies and are more properly rules of substantive law within the meaning of *Erie*."  *Id.* (citation omitted).

Washington State's Uniform Mediation Act ("UMA"), R.C.W. § 7.07 *et seq.*, bars admission of evidence pertaining to mediation communications.  The state statute embodies a state substantive interest in the confidentiality of mediation discussions in order to promote candid participation in mediations.  Washington State's UMA is an integral component of Washington's substantive state policy of protecting the privacy of mediation communications and is properly characterized as substantive law within the meaning of *Erie*.  Accordingly, the Court finds that Washington State's UMA is an exception to the general rule that the federal rules govern the admissibility of evidence in diversity cases.  Therefore, in this diversity case, where communications occurring at a mediation are at issue, the Court finds that Washington State's UMA, not Fed. R. Evid. 408, governs the Court's determination of the evidentiary dispute at issue in the instant motion.

///

///

ORDER . . . - 5

**III. Mediation Communications**

Defendant's motion requests that the Court enter a protective order prohibiting it from being compelled to disclose any mediation communications through any discovery mechanism, including depositions. (Ct. Rec. 23 at 10). The basis of this request is that Washington State's UMA, R.C.W. § 7.07 *et seq.*, precludes admission of evidence pertaining to mediation communications. Defendant argues that the mediation communications at issue in this case, including any evidence of alleged "bad faith" conduct of an insurer, cannot be admitted. The undersigned does not agree.

Pursuant to R.C.W. § 7.07.030, "[a] mediation communication is privileged . . . and is not subject to discovery or admissible in evidence in a proceeding . . . ." R.C.W. § 7.07.030(1). "A mediation party may refuse to disclose and may prevent any other person from disclosing a mediation communication." R.C.W. § 7.07.030(2)(a). A "mediation communication" is defined as "a statement, whether by oral or in a record or verbal or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator." R.C.W. § 7.07.010(2). "Mediation" is defined as "a process in which a mediator facilitates communications and negotiation between parties to assist them in reaching a voluntary agreement **regarding their dispute**." R.C.W. § 7.07.010(1) (emphasis added).

The UMA does not protect communications other than those related to the underlying dispute. Therefore, Defendant's communications and alleged conduct at the mediation is only privileged under the UMA to

ORDER . . . - 6

the extent it pertains to the mediated dispute.  Contrary to Defendant's argument (Ct. Rec. 23 at 8), the only "dispute" to be resolved at the mediation was the issue of damages for the Greens' injuries.  The mediation was not intended to resolve issues of insurance coverage.  While Defendant was clearly a "mediation party" participating in the mediation process regarding damages for the Greens' injuries, the "dispute" at issue did not involve insurance coverage.  The Court finds that any communications involving insurance coverage are unrelated to the dispute being mediated, damages for the Greens' injuries.  Consequently, Plaintiff should not be prohibited by a protective order from obtaining discovery concerning Defendant's statements during the mediation at issue which were separate from the dispute being mediated.

Moreover, although the Court has concluded herein that Washington State law is applicable in this case, the Court finds it noteworthy that Courts have found Fed. R. Evid. 408 does not exclude evidence of prior settlement negotiations to show that an insurance company acted in bad faith.  *See Cal. Union Ins. Co. v. Liberty Mut. Ins. Co.*, 920 F.Supp. 908, 920 n. 7 (N.D. Ill. 1996) (citation omitted); *see, also, Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) ("Under South Dakota law, an insurer's attempt to condition the settlement of a breach of contract claim on the release of a bad faith claim may be used as evidence of bad faith.").  Under the federal rules, evidence of prior settlement negotiations may be admitted to reveal an insurance company acted in bad faith.

///

ORDER . . . - 7

Based on the foregoing, **IT IS HEREBY ORDERED**:

1. Defendant's motion for a protective order re: mediation communications (**Ct. Rec. 22**) is **DENIED**.

2. Plaintiff's motion for telephonic oral argument on Defendant's motion for a protective order (**Ct Rec. 35**) is **DENIED** pursuant to this Court's authority under Local Rule 7.1(h)(3).

3. This matter shall forthwith be scheduled for a telephonic scheduling conference.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___16th___ day of September, 2008.

                    S/Fred Van Sickle
                    Fred Van Sickle
            Senior United States District Judge

ORDER . . . - 8